**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-02385-CMA

CAROL J. TENNISON,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

_____

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**
_____

**I.  OVERVIEW**

This is a social security benefits appeal brought under 42 U.S.C. §  405(g).

Plaintiff Carol J. Tennison ("Plaintiff") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for social

security disability benefits.  The denial was affirmed by an administrative law judge

("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security

Act ("Act").  Plaintiff argues the ALJ committed two errors:

    (1)     The ALJ failed to follow the treating physician rule; and

    (2)     The ALJ failed to properly evaluate Plaintiff's credibility.

(Doc. # 9.)

Plaintiff requests an Order reversing and remanding for a calculation and

awarding of benefits or for a new hearing.  (*Id.* at 25.)  After reviewing the record and

considering Plaintiff's arguments and those of Defendant, the Court AFFIRMS the ALJ's decision.

## II.  FACTS

## A.    MEDICAL EVIDENCE

Plaintiff was born on July 26, 1953, and was 52 years old when she stopped working due to chronic pain.  (Doc. # 4 at 267, 502.)  Plaintiff has an associate's degree in science and has worked in various health care settings, including as a staff registered nurse ("RN") at hospitals, a home health agency, and a drug and alcohol rehabilitation center.  (*Id.* at 291, 518.)  She has also worked as a hospital rehab nurse and, most recently, as a staff development coordinator for an assisted living facility before she stopped working on January 26, 2006.[1]  (*Id.* at 91, 300, 501.)

In addition to her disability claims of fibromyalgia, chronic fatigue syndrome, depression, and insomnia, Plaintiff has been treated for rheumatoid arthritis.  Mentally, she has been treated for depression and anxiety.  The physical pain associated with fibromyalgia has severely limited Plaintiff's activities, and what few activities she engages in have caused her great pain.  Plaintiff has seen several doctors for treatments and has taken various prescription medications without any noticeable long-term improvement in her medical condition.  (*Id.* at 380, 382, 423-437 440.)

---

[1]   The record was inconsistent as to when Plaintiff actually stopped working.  In resolving the issue, the ALJ determined that Plaintiff stopped working on March 3, 2006. (*Id.* at 502.)

2

From January 2006 through July 2006, Plaintiff was treated by Dr. Janet

Basinger, M.D., at the Rio Grande Hospital Clinic ("Clinic").  (*Id.* at 375.)  Dr. Basinger

treated both Plaintiff's physical and mental ailments.  To initiate her treatment at the

Clinic, Plaintiff had a physical in January of 2006, and was prescribed physical therapy

and Relafen for fibromyalgia.  (*Id.* at 374.)  Upon follow-up in February, Plaintiff stated

that two to three weeks of physical therapy had not helped her pain, and she continued

to suffer pain in her joints, lower back, right shoulder, and ankle.  (*Id.* at 372.)  When

Plaintiff filed for Social Security Disability Benefits on February 22, 2006, she apparently

asked Dr. Basinger to support her disability claim.  (*Id.* at 271, 372.)   Dr. Basinger's

notes for February 20, 2006, indicate that Dr. Basinger told Plaintiff that she could not in

good conscience support Plaintiff's Social Security Disability claim until she had

reviewed and received her past records and treatments for fibromyalgia.  (*Id.* at 372.)  In

March of 2006, Plaintiff reported to Dr. Basinger that she was feeling better, *i.e.*, she

was sleeping better, although she continued having difficulty falling asleep.  (*Id.* at 371.)

In April 2006, Plaintiff reported to Dr. Basinger that her stress, anxiety, nausea,

and tremors had improved with treatments of Celexa and Trazodone.  Plaintiff's

depression and insomnia also improved, and she reported sleeping better than she had

in years, although a fair night's sleep was still limited to four of every seven nights.

(*Id.* at 370, 371.)  Dr. Basinger noted that the Social Security Disability evaluation was

"beyond [Dr. Basinger's] scope" and recommended that Plaintiff see a physiatrist

(rehabilitation physicians who are specialists in diagnosing and treating pain), the

Regional Occupational Medicine Program in Alamosa, or other physicians who perform disability evaluations.  (*Id.* at 370.)

After foot surgery in May 2006, Plaintiff was seen by Kim Woodke, PA-C, in July 2006, for complaints of asthma and wheezy breathing, often triggered after time spent outdoors.  (*Id.* at 369, 368.)  At that time, Plaintiff reported a past history of exertional asthma.  (*Id.*)

On July 21, 2006, a Social Security consultive examiner, Richard Madsen, PhD, performed a psychological evaluation on Plaintiff for her Social Security claim.  (*Id.* at 365-367.)  Dr. Madsen found Plaintiff had average functioning, difficulty in a work schedule, moderate recurrent depression, as well as post-traumatic stress disorder stemming from being sexually assaulted as a teenager.  (*Id.* at 367.)  Dr. Madsen concluded that "[h]er ability to do work-related activity is impaired at the level of her depression."  (*Id.* at 367.)  Dr. Madsen assessed Plaintiff's Global Assessment of Functioning ("GAF") at 50.[2]  (*Id.*)

On seven separate occasions between August 2, 2006, and February 28, 2007, Plaintiff sought care at the San Luis Valley Mental Health Center ("SLV Mental Health Center") for medical management related to her depression.[3]  (*Id.* at 423-437.)  Plaintiff worked with a variety of staff, including Nikki Tolle, M.A., and clinicians Nikki Leaf and

---

[2]  The GAF is used to report on a person's overall psychological, social, and occupational functioning.

[3]  Plaintiff sought help at the SLV Mental Health Center on the following dates:  August 2, 2006, August 4, 2006, August 18, 2006, September 28, 2006, November 14, 2006, February 5, 2007, and February 28, 2007.  (*Id.* at 423-437.)

Jennifer Harrod.  (*Id.*)  The SLV Mental Health Center assessed Plaintiff's GAF at 65 with mild symptoms, and found that she was not gravely disabled.[4]  (*Id.* at 430, 426.) The SLV Mental Health Center diagnosed Plaintiff with major depressive personality disorder and prescribed Seroquel for anxiety and insomnia.  (*Id.* at 437, 433.)  In an effort to treat Plaintiff's complaints of depression, anxiety, insomnia, and panic attacks, the SLV Mental Health Center prescribed a variety of medicines including Rozerem, Celexa, Cymbalta, and Trazodone.  (*Id.* at 432-437.)

On August 7, 2006, the state agency Single Decision Maker ("SDM") evaluated Plaintiff for her Social Security claim.  The SDM reported Plaintiff was recovering extremely well from her listed primary diagnosis of surgery on her right foot.  (*Id.* at 380, 382.)  Plaintiff had listed her fibromyalgia as her secondary diagnosis, along with chronic fatigue syndrome, depression, and insomnia.  (*Id.* at 380.)  The SDM also noted that Plaintiff was affected by obesity and irritable bladder syndrome.  (*Id.* at 381.)  The SDM predicted that "[c]laimant's condition will improve and by January, 2007, she will be able to work within limitations described in the RFC."  (*Id.* at 385.)  The SDM did not, however, indicate which of Plaintiff's listed ailments, her foot surgery or fibromyalgia, were anticipated for recovery.

Also on August 7, 2006, Douglas Hanze, PhD, performed a psychiatric review on Plaintiff for her Social Security claims.  Dr. Hanze determined the Plaintiff had

---

[4]   The ALJ found that the SLV Mental Health Center GAF score of 65 contradicted, to some extent, Dr. Madsen's score of 50, which was issued by him only one month earlier.

major depression along with a non-specified personality disorder.  (*Id.* at  391, 395.)

Dr. Hanze concluded that Plaintiff "is capable of work of limited complexity but which

requires accuracy and attention to detail," and that "depression may cause reduced

pace of work."  (*Id.* at 404.)

On November 30, 2006, Plaintiff saw Dr. Patrick Timms, M.D., a rheumatology

specialist, for treatment of inflammatory rheumatoid and psoriatic arthritis, and

fibromyalgia.  (*Id.* at 159, 438, 161.)  On January 5, 2007 – after only the November

30, 2006 meeting with Plaintiff – Dr. Timms completed a Rheumatoid Arthritis

Questionnaire for Plaintiff's attorneys indicating that Plaintiff was incapable of even

low stress work because she was not able to sit or stand more than one hour per day.

(*Id.* at 444, 443.)  On February 2, 2007 and March 30, 2007, Plaintiff had follow-up visits

with Dr. Timms for treatment for psoriatic arthritis and fibromyalgia.  (*Id.* at 450, 438.)

Although the ALJ issued his decision on June 19, 2007, Plaintiff details the

medical claims and treatments she received from four other practitioners occurring after

that date:  Dr. Strauss-Witty, beginning July 20, 2007; Dr. Dwaine McCallon beginning

August 24, 2007; Dr. Steven Maher beginning October 10, 2007, and St. Vincent

Hospital on September 26, 2007.  Plaintiff also details additional treatments by

Dr. Timms that occurred after the issuance of the ALJ's decision.  To the extent

these physicians treated Plaintiff after the ALJ's decision, the Court disregards those

medical records, because the Court's review is limited to the ALJ's decision regarding

the alleged period of disability.

6

**B.      PROCEDURAL HISTORY**

Plaintiff applied for Social Security Disability Benefits ("SSDI") on February 22, 2006 and Supplemental Security Income ("SSI") on April 27, 2006.  (*Id*. at 271, 458, 463.)

The Social Security Administration denied Plaintiff's claims on August 8, 2006, because Plaintiff's ailments were not expected to remain severe enough for twelve consecutive months, and because Plaintiff's age and education would allow her to do other work beginning in January of 2007.  (*Id*. at 463.)

1.      Administrative Hearing

Plaintiff appealed the denial and had a hearing before the Administrative Law Judge ("ALJ") on April 11, 2007.  The ALJ inquired into the Plaintiff's driving ability, when and why she stopped working, her experience with Dr. Timms, as well as her medications and physical ailments.

In response to the ALJ's questions regarding the length, distance, and frequency of breaks during automobile travel, Plaintiff testified that she does drive and, in fact, drove to the disability hearing, about a fifteen minute trip.  (*Id*. at 499.)  She also stated she drives from her home in Monte Vista, Colorado, to see Dr. Timms in Pueblo, Colorado (approximately a two and a half hour drive) about every month and a half to two months, but often travels as a passenger and also requires rest breaks along the way.  (*Id*. at 500.)

Due to inconsistencies as to when Plaintiff stopped working, the ALJ selected the date of March 3, 2006.  (*Id*. at 502.)  In response to the ALJ's questions, Plaintiff declared her "retirement" was an independent decision and not based on advice from her health care providers.  (*Id*.)

The ALJ then transitioned into Plaintiff's relationship with Dr. Timms, her treating rheumotologist, inquiring into records of her treatment.  The ALJ asked if any of Plaintiff's physicians suggested a limit of her physical activities.  (*Id*. at 503.)  Plaintiff responded that Dr. Timms suggested such a limit, but could not remember if that recommendation was ever put in writing.  (*Id*. at 504.)  The ALJ stated that he had only one record of Dr. Timms' treatment of Plaintiff despite visits by the Plaintiff to Dr. Timms every month and a half.  (*Id*.)  The ALJ asked counsel if those previous visits were not intended to be part of the record.  (*Id*.)  Counsel responded that those records were requested but had not been received.  (*Id*.)  The ALJ stated the records "should've been requested . . . and made part of the record earlier."  (*Id*.)

The ALJ engaged in a substantive series of questions regarding Plaintiff's medications including the type, the benefits and drawbacks, and when and why a particular medication was discontinued.  (*Id*. at 504-508.)  Plaintiff's testimony concluded with the ALJ asking about her claims of fibromyalgia, chronic fatigue, and insomnia, including when they were diagnosed and who she is seeing for treatment. (*Id*. at 509.)  Plaintiff stated that Dr. Timms was managing her treatment for both fibromyalgia and chronic fatigue.  (*Id*.)

8

Plaintiff's counsel then focused primarily on the physical limitations resulting from Plaintiff's condition.  Plaintiff described the difficulty and time it took for her to complete household chores such as mopping and washing dishes.  Plaintiff testified that both chores took an entire day to complete because she could work only ten minutes at a time and required many breaks.  (*Id.* at 510.)  Plaintiff described her difficulties at her last job as including prolonged sitting, standing, walking, and ergonomic problems with typing.  (*Id.*)  Plaintiff also testified that she had balance issues and joint stiffness which require her to use a cane and wear a wrist brace.[5]  (*Id.* at 512, 516.)  Plaintiff testified to problems with fine motor skills that caused her to drop glasses, pots, and silverware, and to having difficulty tying her shoes.

Although not part of her claim, Plaintiff said she experiences migraine headaches 75% of the time, requiring her to lay down four to six hours a day for pain relief and rest.  (*Id.* at 512-14.)  Plaintiff concluded by testifying that her mental health issues resulted in the inability to handle crowds, depression, anxiety, panic attacks causing shakes and tremors that manifested in her hands, and anger and irritability, coupled with crying on a weekly basis.  (*Id.* at 514-515.)

A vocational expert ("VE"), Bruce Magnuson, also testified at the hearing.  He determined Plaintiff's past employment in nursing was at an exertional level of "medium

---

[5]  The ALJ, however, noted that no treating physician had prescribed use of a cane.  (*Id.* at 245.)

seven" with her supervisory duties requiring slightly more demands at "medium eight." (*Id.* at 517.)  The VE testified that a hypothetical person with Plaintiff's limitations attempting to perform semi-skilled work would be unable to perform Plaintiff's past work, due to the semi-skilled limitation.  (*Id.* at 518-519.)  Thus, the VE reduced Plaintiff's abilities to "light three" after assessing her physical limits.  (*Id.* at 519.)  However, the VE stated this limit allowed for work in the regional and national economy in jobs such as sales clerk, general clerk, and a cashier.  (*Id.*)

The VE also testified that with moderate limitations, such semi-skilled employment would not be affected because of Plaintiff's psychologically-based symptoms.  (*Id.* at 519.)  The ALJ posed a final hypothetical question to the VE regarding degrees of possible employment based on the Plaintiff's testimony and assuming all of her claims were supported by medical evidence.  In response, the VE stated: "I think my major concern would be the limited amount of time it takes her to do any activities, combined with the fatigue, chronic pain, frequency of migraine headaches, difficulty being around people.  I think that would eliminate work."  (*Id.* at 520.)

After reminding the VE that Plaintiff was diagnosed with major depression, Plaintiff's counsel asked the VE about Plaintiff's ability to do only work-related activities

that are limited to the level of her depression.[6]   The VE responded, "I guess I would say

that would preclude all work."

      2.   <u>Administrative Decision</u>

On June 19, 2007, the ALJ denied the appeal based on the medical reports and

testimony which comprise the entire case record ("Record").  (*Id.* at 239-245.)

The ALJ evaluated Plaintiff's claim in light of the five step sequential evaluation

process.  20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ determined that Plaintiff had

not engaged in substantial gainful activity since January 26, 2006, the alleged onset

date.  At step two, the ALJ determined that Plaintiff had the following severe

combination of impairments: fibromyalgia, depression with anxiety related symptoms,

and problems with her right foot.  At step three, the ALJ determined that Plaintiff did not

have an impairment or combination of impairments that meets or medically equals one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four the ALJ determined that:

> [T]he claimant has the [RFC] to perform a significant range of light
> exertional work.  She is able to lift, carry, push, and or/pull up to 20
> pounds occasionally and lesser weights more frequently.  She can sit for
> 6 hours in an 8-hour workday, and can stand and/or walk up to 6 hours in
> an 8-hour workday with normal breaks.  She is unable to climb ladders,
> rope, and scaffolds.  She can occasionally climb ramps and stairs, stoop,
> kneel, crouch, and crawl.  She is unable to balance.  She should avoid
> concentrated exposure to temperature extremes, wetness, humidity, and
> vibrations. She is further limited to the performance of no more than semi-

---

[6]   Dr. Madsen had concluded that Plaintiff's "ability to do work-related activity is
impaired at the level of her depression," and assessed her with "[m]ajor depression, recurrent,
moderate" on Axis I of diagnostic impression.  (*Id.* at 367.)

skilled work.  She is moderately limited in her ability to maintain attention
and concentration for extended periods, and moderately limited in the
ability to complete a normal workday and workweek without interruptions
from psychologically based symptoms and to perform at a consistent pace
without an unreasonable number and length of rest periods.

(*Id.* at 242-43.)

In deciding Plaintiff's RFC, the ALJ focused on Plaintiff's symptoms.  The ALJ

followed a two-step approach in evaluating Plaintiff's symptoms and their effect on

potential employment: first, whether there was a physical or mental impairment that

could reasonably be expected to produce the plaintiff's symptoms, and, if so, second,

whether "the intensity, persistence, and limiting effects" of the symptoms are sufficiently

supported by the record to limit work as suggested by Plaintiff.  In evaluating the

symptoms at this step two, the ALJ considered the objective medical evidence and

Plaintiff's statements.  *See* 20 C.F.R. §§ 404.1529.

At step one, the ALJ found that Plaintiff's impairments could reasonably be

expected to produce the alleged symptoms.  At step two, however, the ALJ found that

Plaintiff's subjective complaints were not entirely credible.  (*Id.* at 244.)  In assessing

credibility, the ALJ examined Plaintiff's activities, the duration and symptoms of her

pain, the effectiveness of both medicinal and non-medicinal treatment, as well as other

treatments documented in the Record.  (*Id.*)  He also considered the opinion of the

SDM.  (*Id.* at 246.)  Although the ALJ acknowledged that the SDM was "not qualified as

an acceptable medical source, the ALJ gave considerable weight to the SDM's opinion

because it was "highly consistent with the evidence of record"  (*Id.*)

12

With respect to Plaintiff's physical claims, the ALJ discounted "the intensity, persistence, and limiting effects" of Plaintiff's symptoms.  (*Id.*)  The ALJ reasoned that despite claims of fibromyalgia dating from 1994 and chronic fatigue syndrome extending as far back as 1982, Plaintiff engaged in sustained employment during this period.  (*Id.*)  Furthermore, the ALJ found no evidence of the condition worsening, as well as no records of past fibromyalgia treatment.  (*Id.*)  The ALJ noted that Plaintiff continued using the same medications despite the fact they appeared ineffective in addressing her symptoms.  In addition, the ALJ noted that Plaintiff had made no significant attempts to lose weight to improve her symptoms.  (*Id.* at 245.)  The ALJ found that the Record demonstrated Plaintiff's continued ability to do laundry with assistance, iron, dust, and water the lawn and plants with intermittent rest.  (*Id.*)

The ALJ also found that Plaintiff's mental claims were not entirely credible. Despite testifying that she had recurring panic attacks, the ALJ noted that Plaintiff failed to report these attacks to her physicians.  (*Id.* at 245.)  In addition, the ALJ found that Plaintiff's mental ailments had not interfered with her ability to go shopping or drive. (*Id.* at 246.)  The ALJ found that Plaintiff's treatment for depression and anxiety was minimal because, although Plaintiff sought prescription medication from the SLV Mental Health Center on seven occasions, Plaintiff did not seek regular mental health therapy or counseling during the time at issue.  (*Id.* at 245.)  In sum, the ALJ found that Plaintiff's claims of physical and mental ailment were not supported by the Record and, thus, were not entirely credible.  (*Id.* at 244.)

13

In addition to doubting Plaintiff's claims, the ALJ did not give controlling weight to two of Plaintiff's treating physicians.  The ALJ rejected Dr. Patrick Timms' (Plaintiff's treating rheumatologist) conclusion that Plaintiff could not sit, stand, or walk for more than one hour out of eight daily because the conclusion was "in excess of that which can be supported by the evidence of record." (*Id.* at 246.)  The ALJ questioned the credibility of Dr. Timms' report because Dr. Timms' assessment was made after only one examination.  (*Id.*)  Looking at the Record in the aggregate, the ALJ found that Dr. Timms' suggested limits were not supported by "documented abnormalities on this initial examination." (*Id.*)  In addition, the ALJ concluded that Dr. Timms' recommended limitations were based primarily on the claimant's subjective complaints, which the ALJ previously found were not fully credible.  Because of Dr. Timms' limited treatment of Plaintiff, the lack of objective support for his claims in the Record, and his reliance on subjective reports from Plaintiff, the ALJ gave no weight to Dr. Timms' assessment of Plaintiff's disabilities.  (*Id.*)

The ALJ also gave no weight to the recommended functional limitations suggested by Dr. Richard Madsen, the state agency psychological consultant.  The ALJ noted that Dr. Madsen's assessment of Plaintiff was inconsistent with his own narrative report and mental status examination.  (*Id.* at 246.)  Specifically, Dr. Madsen's determination of Plaintiff's GAF score of 50, which suggests serious symptoms, was inconsistent with Dr. Madsen's exam and report, both of which suggested only moderate difficulties.  (*Id.*)  The inconsistencies between Dr. Madsen's ultimate GAF

assessment and his report and exam led the ALJ to conclude the GAF score of 50 was based on Plaintiff's subjective reports of her symptoms and not supported by the objective medical evidence.  The ALJ thus found that Dr. Madsen's recommendations were "inconsistent with the objective evidence of record as a whole," due in part from a conflicting GAF score of 65 (indicating mild symptoms) given to Plaintiff one month after Dr. Madsen's evaluation.  (*Id.* at 246, 247.)  The ALJ noted that when Plaintiff was assessed a 65 GAF, she was also listed as not being gravely disabled.  (*Id.* at 247.) As a result, the ALJ rejected Dr. Madsen's recommended functional limitations.

Finally, at step five of the sequential evaluation process, the ALJ concluded that Plaintiff would be able to make "a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id.* at 248.)

3.    Plaintiff's Appeal

Following the ALJ's June 19, 2007 denial of Plaintiff's disability claims, Plaintiff requested and received a review of the ALJ's decision by the Social Security Appeals Council ("Council").  (*Id.* at 8.)  On September 10, 2008, the Council found no evidence of an abuse of discretion, legal error, and no indication that the ALJ made his decision on anything less than substantial evidence of record.  (*Id.*)  Plaintiff submitted new medical documentation to the Council for review, however, the Council determined that the new information related to recent health claims and did not affect the ALJ's decision regarding whether Plaintiff was disabled on or before June 16, 2007.  (*Id.* at 9.)

On February 6, 2009, Plaintiff filed the instant appeal seeking judicial review of the ALJ's decision.  The Defendant's response brief was filed on April 3, 2009, followed by Plaintiff's Reply Brief dated April 6, 2009.  Oral argument on this appeal was held on July 13, 2009.

### III.  ANALYSIS

**A.    STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  Additionally, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

**B.    EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

16

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See id.*; *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof at steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If a decision regarding the claimant's disability can be reached at any step in the process, further evaluation is unnecessary. *Williams*, 844 F.2d at 750.

## C.  DISABILITY DETERMINATION

Plaintiff argues two points on appeal. First, the ALJ failed to follow the treating physician rule in rejecting the opinions of Dr. Timms (treating rheumatologist) and Dr. Madsen (government examining psychologist). (Doc. # 9 at 21.) Second, the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 23.)

1.  <u>The ALJ's Regard for the Treating Physicians' Opinions</u>

The opinions of treating physicians are generally given controlling weight. Here, however, they were not. The ALJ found Dr. Timms' recommendations to be "in excess

of that which can be supported by the record" and Dr. Madsen's findings inconsistent with both his own reports as well as the record as a whole.  (Doc. # 4 at 246.)

If a treating physician's opinion is not given controlling weight, the ALJ must "give good reasons" and consider a list of regulatory factors.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2).  These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins*, 350 F.3d at 1301.  The ALJ need not discuss all the factors as long as they are considered.  Given these requirements, the ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the treating physician's opinion and reasons for that weight.  *Id.* at 1300-01.

a)   *Dr. Timms' Opinion*

The ALJ properly evaluated all of the factors in concluding that Dr. Timms' opinion was not entitled to controlling weight.  The Tenth Circuit has held "that a treating physician's opinion might be rejected if it is brief, conclusory, and unsupported by medical evidence," and if specific reasons for rejection are given.  *Frey v. Bowen*, 816

18

F.2d 508, 513 (10th Cir. 1987).  The ALJ determined such factors existed with Dr. Timms' analysis because his recommended limits were based on only one examination in November of 2006.  (Doc. # 4 at 246.)  The rationale behind giving greater weight to a treating physician's opinion is that a treating physician generally has had a longer, more involved relationship with the patient than non-treating sources. In the instant case, that rationale is not applicable because Dr. Timms' assessment was based on a single treatment of Plaintiff.

Furthermore, the ALJ found Dr. Timms' suggested limits of sitting or standing for one hour out of eight were "not supported by documented abnormalities on this initial examination."  (Doc. # 4 at 246.)  The ALJ concluded that there was no objective medical support for this conclusion and that Dr. Timms' recommended limits were "based on the claimant's subjective complaints."  (*Id.*)  An ALJ may disregard a doctor's opinion when it is based on a claimant's subjective complaints.  *See Brescia v. Astrue*, 287 Fed.Appx. 626, 630 (10th Cir. 2008); *Heinritz v. Barnhart*, 191 Fed.Appx. 718, 723 (10th Cir. 2006).

The ALJ stated Dr. Timms' opinions were based solely upon one physician visit and lacked other objective medical support.  In doing so, the ALJ duly articulated legitimate reasons for not giving weight to Dr. Timms' opinions.  Therefore, the Court concludes that the ALJ applied the correct legal principles and that his decision to reject Dr. Timms' assessment was supported by substantial evidence.  *See* 20 C.F.R. § 404.1527 (d)(2)(I).

19

b)      Dr. Madsen's Opinion

Similarly, the ALJ acted properly in giving no weight to Dr. Madsen's GAF score and his recommended functional limitations, because they were contradicted by other medical evidence and were inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 Fed.Appx. 757, 760 (10th Cir. 2009).  The ALJ cited inconsistencies between, on the one hand, Dr. Madsen's assessment of Plaintiff's GAF score, and, on the other hand, Dr. Madsen's mental status examination and narrative report.  (Doc. # 4 at 246.)  Dr. Madsen's narrative report and mental status examination suggests only moderate difficulties,[7] whereas his assessment of Plaintiff's GAF of 50 suggests serious symptoms.

Furthermore, Dr. Madsen's conclusions also conflict with the record as a whole. The ALJ references that only one month after Dr. Madsen's GAF score of 50, the SLV Mental Health Center found the Plaintiff not to be gravely disabled and assessed Plaintiff's GAF at the higher functioning level of 65.  (*Id.* at 246-247).  The Court also notes that the rationale behind giving greater weight to a treating physician's opinion, i.e., that a treating physician generally has had a longer, more involved relationship with the patient than non-treating sources, is not applicable in this case.  Dr. Madsen is a state agency psychological consultant, saw the Plaintiff only on this one occasion, and his assessment was based on this single consultation with Plaintiff.

---

[7]   "The client is oriented to person, place, and time . . . .  Thought process is non-psychotic.  Content was logical and relevant." (*Id.* at 366.)  "Level of intellectual functioning appears to be adequate . . . .  Abstract reasoning ability appears to be average." (*Id.*)  "The client current functioning is average." (*Id.* at 367.)

Thus, the Court finds that the ALJ applied the correct legal principles and his decision to not give controlling weight to the opinions of Dr. Timms and Dr. Madsen is supported by substantial evidence in the record.

2.      The ALJ's Assessment of Plaintiff's Credibility

The second issue is whether the ALJ gave proper weight to Plaintiff's claims. The ALJ's review of claimed impairments, including those for which there was minimal evidence, led him to conclude that the effects of the Plaintiff's symptoms were not substantiated by the objective medical evidence.

In assessing the credibility of Plaintiff's statements against the Record, the Code of Federal Regulations ("CFR") requires the ALJ to consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain; (5) treatment beyond medication; (6) other measures to alleviate symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c).

The ALJ properly applied these factors to Plaintiff's case.  In assessing Plaintiff's daily activities, the ALJ noted sustained employment since the claimed onset of fibromyalgia in 1994 along with activities such as driving, shopping, and preparing meals.  (Doc. # 4 at 246.)  The ALJ addressed the frequency and duration of pain by noting that there was no evidence of the condition worsening.  (*See id.* at 245.)  Further examination of the record led the ALJ to question the effectiveness of Plaintiff's

medications because they failed to provide relief. (*Id.*) The ALJ found it significant that Plaintiff undertook no measures, other than medication management, to address her medical problems. (*See id.* at 244.)

At step four of the five step process for determining disability, the Plaintiff must show that the impairment or combination of impairments prevent her from performing her past work. *Lax v. Astrue*, 489 F. 3d 1080, 1084 (10th Cir. 2007). It is also at this stage that the ALJ determines the RFC. The Tenth Circuit has said that "the entire administrative record is a necessary part of appellant's record on appeal." *Goatcher v. United States Department of Health & Human Services.*, 52 F.3d 288, 289 (10th Cir. 1995). Relying upon a systematic review of the entire record, the ALJ determined that Plaintiff had the RFC to sit and stand for six hours out of an eight hour day doing light exertional work. (Doc. # 4 at 246.) The ALJ's decision is supported because "the ALJ, not a physician is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004), *See, e.g.*, 20 C.F.R. § 416.927(e)(2); Soc. Sec. R. 96-5p, 1996 WL 374183.

After reviewing the Record, the ALJ found that Plaintiff's impairments were capable of producing the alleged symptoms. The ALJ, therefore, determined that Plaintiff met step four and was unable to perform any of her previous work. (Doc. # 4 at 247.) However, the ALJ properly determined that considering Plaintiff's age, education, and level of RFC, Plaintiff could engage in employment existing in the national economy. (*Id.*); 20 C.F.R §§ 404.1520(g) and 416.920(g). It is the Court's conclusion

that the ALJ applied the correct legal principles and that his assessment of Plaintiff's credibility and RFC is in accord with substantial evidence in the record.

      3.    Plaintiff's New Evidence

Plaintiff supports her arguments by describing several visits with Dr. Timms which occurred after the ALJ issued his opinion; in essence, Plaintiff wants the Court to consider evidence that was not before the ALJ when he issued his decision.  The governing law dictates the parameters of the Court's review.  The Tenth Circuit requires the ALJ's decision to be "evaluated based solely on the reasons stated in the decision." *See Robinson v. Barnhardt*, 366 F.3d 1078 (10th Cir. 2004).  Specifically, new evidence should not be considered unless it is (a) new, (b) material and (c) related to the period on or before the date of the ALJ decision.  *See Chambers v. Barnhardt*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted).

The Court recognizes the great amount of medical assessments and treatments submitted after the ALJ made his decision, and encourages Plaintiff to consider filing a new claim supported by any additional evidence not originally submitted to the ALJ.

**D.      CONCLUSION**

The ALJ's denial of Plaintiff's applications for disability benefits is supported

by substantial evidence in the record and free of legal error.  Accordingly, the

Commissioner's decision is AFFIRMED.  No fees or costs are awarded.

DATED:  October 29, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge